WEINGARDEN v. FOLLY THEATRE CO.

1. CONTRACTS—PARTIES—NOVATION—BAILMENT.
   Testimony to the effect that plaintiff rented a quantity of theatrical costumes to the defendant, which transferred its assets and business to another company, incorporated for the purpose of conducting such theatrical business as defendant had carried on, that the managers of the two companies were the same, that plaintiff continued providing the rented costumes and defendant paid part of the rental, sending a check for the last amount subsequently to the change, signed by the manager of both corporations, but ceased to pay for rentals accruing after the transfer of its assets, contending that the later concern owed the debt, was insufficient as a matter of law to estop plaintiff from recovering against the original debtor on the theory that a novation had been effected.

2. SAME—CHANGE OF PARTIES—NOTICE.
   And although defendant claimed plaintiff had been notified in conversations and by written communications that the defendant had made the transfer to the second corporation, the notice alone did not shift the contract obligation

to the other company unless plaintiff expressly or impliedly consented to accept a new debtor in the stead of the defendant.

Error to Wayne; Hally, J.  Submitted October 12, 1915.  (Docket No. 44.)  Decided December 21, 1915.

Assumpsit in justice's court by Israel Weingarden against the Folly Theatre Company for a balance claimed to be due for rental of theatrical equipment. From a judgment for plaintiff defendant appealed to the circuit court.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Welsh, Crane & Kahn,* for appellant.

*George W. Bates,* for appellee.

BIRD, J.  The defendant was incorporated in October, 1912, to operate the Folly Theatre in Detroit. When it began operations it also operated a theatrical company.  The costumes for the use of the theatrical company were furnished by plaintiff, who was engaged in the city of Chicago, in the business of renting theatrical costumes.  Mr. Hugh Shutt was manager of the Folly Theatre, and the costumes were addressed and shipped to him, either personally in care of the Folly Theatre, or to him as manager of the Folly Theatre. The rentals were paid for by checks of the company. Matters ran along this way until December, 1912, when the Central Circuit Company was incorporated to operate theatrical companies in the Folly Theatre and elsewhere.  Its principal officers were the same as those of the Folly Theatre Company.  This company took over the theatrical company which had been operated by the defendant.  The plaintiff continued to ship the costumes to the same address, and they were paid for in part by the checks of the Folly Theatre Company, until April 1, 1913.  The rentals which ac-

crued between April 1, and June 22, 1913, being unpaid, plaintiff brought this suit to recover therefor. The defense was that the debt was not owing by defendant, but by the Central Circuit Company; that the plaintiff had notice that the Central Circuit Company had taken over in December, 1912, the theatrical company formerly operated by the defendant, and was itself operating it and using the costumes, and that by reason of such knowledge, plaintiff was estopped from claiming that the defendant was indebted for the rentals. The trial court was of the opinion that the evidence bearing upon this contention was in conflict, and therefore submitted the question of defendant's liability to the jury. They found a verdict for the plaintiff in the full amount of his claim.

1. The real question to be determined was whether the plaintiff impliedly extended credit to the Central Circuit Company, and accepted it as his debtor. The defendant insists that the evidence made it a question of law. The plaintiff contends that the testimony was in conflict, and was therefore a question of fact. Defendant relies upon conversations and letters which passed between the parties, to establish his contention. The letter most relied upon is the following:

"C. W. HARRAH, Pres.          CHAS. LONSBY, Sec.-Treas.
          "HUGH SHUTT, Mgr.
          "FOLLY THEATRE COMPANY, Inc.
     "HOME OFFICE, FOLLY THEATRE BUILDING.
                    "DETROIT, MICHIGAN, Jan. 24, 1913.
"MR. I. M. WEINGARDEN,
     "414 South State Street,
                    "Chicago, Ill.
"*Dear Sir:*
"Your letter of the 23d received, and I thank you for the quick action on sending the dancer out. I am inclosing $4.00 in this letter for the transportation, and will have the company send you a cheque for the other bill just as soon as they can raise a little cash. You see that there is only a few interested in the Central

Circuit.   This is the company that runs the show, and it has been losing every place except here, they are now down in Indiana, and as soon as they can get a little money I will see that it is sent to you.   The theatre is doing well of course under the present arrangements, but the Circuit Co. is a little behind but possibly next week will be in shape to pay you up, I will see that you get some of it any way  just as  soon  as  any  money comes in.

"With best wishes I remain, yours very truly,
"HUGH SHUTT."

The conversations in which Mr. Shutt claims he advised plaintiff of the change in the management of the theatrical company are denied by plaintiff.   The foregoing letter, when read in the light of the other facts, appears to be conclusive only of the fact that the Central Circuit Company had taken over the theatrical company, and was then operating it.   Notice of this fact would not necessarily shift the contract obligation of defendant to the Central Circuit Company, nor would it necessarily follow that because defendant had turned over the theatrical company to the Central Circuit Company, it would refuse to carry out its own contract with plaintiff.   And had plaintiff received the impression from the letter which it is contended he ought to have received, that impression would have been dissipated in part by subsequently receiving defendant's checks in payment of the rentals.   Plaintiff testified that he had never dealt with the Central Circuit Company, and it is not claimed that any express agreement was made, whereby plaintiff should deal with it and accept it as his debtor.   It is not unlikely that the failure of plaintiff to fully appreciate the situation from the information received was due to the fact that Mr. Hugh Shutt was manager of both companies, as it did not clearly appear when Mr. Shutt was talking or writing as manager of the Folly Theatre Company, and when he was talking or writing as manager of the Central

Circuit Company. But whatever the cause of the misunderstanding was, there was a question of fact involved, and the trial court very properly submitted it to the jury.

2. Defendant argues that, when plaintiff was advised by Mr. Shutt that the Central Circuit Company had taken over the theatrical company, and was then operating it, the same rule of law should apply as is applied when the creditor extends credit to a copartnership with knowledge that a certain member of the firm has retired. In such case, if the retiring partner could not be held liable for the debt, the defendant in this case ought not to be so held. The analogy fails for the reason that whether the creditor had notice or not of the retirement of the partner, the debt is all the while against the same firm, and the only question is whether the creditor possessed knowledge of the fact of retirement when the indebtedness was incurred, whereas, in this case it is attempted to substitute one of the contracting parties or debtors for another by bringing notice home to the creditor. The plaintiff made his contract with the Folly Theatre Company, and no other person or corporation could be substituted therefor without his consent. Whether his consent should be inferred from their dealings was the question which the court submitted to the jury, and we think properly so.

The judgment of the trial court is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.